```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

GEOFFREY BASSETT,                 )
                                  )
               Plaintiff,         )
                                  )
     v.                           )    No.  08 C 1123
                                  )
CHICAGO STATE UNIVERSITY, et al., )
                                  )
               Defendants.        )
```

MEMORANDUM OPINION AND ORDER

All defendants in this action--Chicago State University ("University") and its President Elnora Daniel, its Chief of Police William Shaw and its General Counsel Nancy Hall-Walker (the latter three are collectively referred to here as "Individual Defendants")--have filed a Motion To Dismiss ("Motion"), under the auspices of Fed. R. Civ. P. ("Rules") 12(b)(1) and 12(b)(6), the Complaint brought against them by Geoffrey Bassett ("Bassett").  Although the Motion has been noticed up for presentment on August 20, many of the issues that it poses tread well-worn legal paths.  Hence this memorandum opinion and order is issued sua sponte to resolve some of those issues and to make others more susceptible to informed discussion at the August 20 presentment date.[1]

---

[1] This Court has had frequent occasion to speak of the common (indeed, all-too-common) practice under which Illinois-based practitioners (both the plaintiffs' bar and the defense bar) import the state law "cause of action" concept, rather than the federal standard of "claim for relief," into pleading and motion practice--a usage that ignores the salient teaching of such cases as NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287,

First, University correctly asserts that it is not a suable entity (Motion Part C). That flaw might be cured by replacing University's name with "Board of Trustees of Chicago State University" (referred to here as the "Board"), but University rightly says that would do no good because, as an arm of the State of Illinois, the Board is entitled to the benefit of its sovereign immunity (see, e.g., Cannon v. Univ. of Health Sciences/The Chicago Med. Sch., 710 F.2d 351, 357 (7th Cir. 1983)).

Moreover, it is of course well settled that the state is not (and hence none of its constituent entities is) a "person" suable under 42 U.S.C. §1983 ("Section 1983"), which constitutes the gravamen of Bassett's federal-question contentions (Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989)). Hence University and Board are out of the lawsuit as to any federal-question claims (more on Bassett's state law claims later).

Next, Individual Defendants invoke Kolar v. County of Sangamon, 756 F.2d 564, 568 (7th Cir. 1985) to assert that they are sued in their official and not their individual capacities (Motion Part D). But in candor Kolar--when read literally, as

---

291-93 (7th Cir. 1992). As in this case, that usage typically leads to a complaint's division of a single claim into different counts, even though that practice is at odds with the last sentence of Rule 10(b), the only provision of the Rules that speaks of separate counts. This opinion will perforce follow the parties' lead, though not their language, in dealing with the different parts of the Motion.

defendants would have this Court do--was really not good law when it was written. And lest that be viewed as merely this Court's opinion, not many years later the author of the <u>Kolar</u> opinion expressly disavowed that reading in <u>Hill v. Shelander</u>, 924 F.2d 1370 (7th Cir. 1991).[2] Although other aspects of the <u>Hill</u> opinion could be quoted at greater length, the following passages (<u>id</u>. at 1373) explain the reason for retreating from the literal reading of <u>Kolar</u> that has been stressed by the Motion:

> The dissent attempts to turn our decision in <u>Kolar</u> against us, accusing its author (who also writes here for the Court) of jurisprudential inconsistency. The dissent siphons from <u>Kolar</u> the following rule--that a §1983 action that fails to designate the defendant in his official or individual capacity shall be presumed to be against him in his official capacity. As support for this position, the dissent points to the fact that Hill's <u>pro se</u> complaint names "Sgt. Shelander" as the defendant. For this reason, then, the dissent believes that the suit, without further clarification, must be construed as an official capacity suit. The dissent's interpretation of the complaint places the plaintiff in the chokehold of restrictive, overly technical pleading requirements.
>
>                 \*       \*       \*
>
> The point is not that an official capacity suit is to be presumed any time that the complaint fails to explicate clearly the capacity in which the defendant is to be sued. On the contrary, <u>Kolar</u> stands for the

---

[2] It is frankly irresponsible for defense counsel to have cited and quoted <u>Kolar</u>, and to have placed heavy reliance on that decision, without having engaged in the simple homework of running the electronic equivalent of Shepardizing the case. That procedure, which should be followed whenever <u>any</u> case is cited, would have disclosed the existence of the later authorities referred to in the ensuing text of this opinion--in turn forcing a total recasting of the approach taken in the Motion.

proposition that an official capacity suit will be presumed when the indicia of an official policy or custom are present in the complaint.

And the same Shepardizing procedure referred to in n.2, neglected by defense counsel, would also have led counsel to Miller v. Smith, 220 F.3d 491, 494 (7th Cir. 2000), with its further explanation of why Kolar is not at all controlling authority in this area:

> Hill v. Shelander, 924 F.2d 1370 (7th Cir.1991), a case neither party discusses, is instructive.  In Hill, we said Kolar did not contain a rigid rule that a §1983 plaintiff who fails to designate whether a defendant is being sued in her official or individual capacity shall be presumed to be bringing the action against the defendant in her official capacity.  See 924 F.2d at 1373.  Instead, we explained that in Kolar we opted to treat the suit as against the defendant in his official capacity partly because the complaint referred to him by his official title, but more importantly because the suit itself challenged an official policy or custom.  Id.  By contrast, in Hill we found that the suit was properly construed as against the defendant in his individual capacity because he sought punitive damages--a remedy only available in an individual capacity suit--and because "the unconstitutional conduct alleged involve[d][the defendant's] individual actions and nowhere allude[d] to an official policy or custom."  Id. at 1374.  We then spelled out a new regime for §1983 claims that do not specify the capacity in which the defendant has been sued:  Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity.  Id. at 1373-1374.

And the stance announced in Hill and reconfirmed in Miller makes eminently good sense.  After all, to bring Section 1983 into play against an individual at all, a plaintiff must identify

4

that individual as a state actor--as a "person." That is naturally most often done by specifying the official capacity that the individual defendant occupies. So to regard the specifications in Bassett's Complaint as to the positions held by Individual Defendants as connoting an official-capacity lawsuit would clearly constitute impermissible overkill.

In light of the post-Kolar caselaw, any arguable doubt on that score is clearly be dispelled by such individualized allegations as those set out in Complaint ¶¶20 and 25, coupled with the allegations that collectivize "defendants" when speaking of actions attributable to Individual Defendants. Moreover, the Motion's reference to Ky. v. Graham, 473 U.S. 159, 165 (1985)(Motion at 4) ignores the real thrust of that opinion: that official-capacity allegations against individuals are pure surplusage when the state itself is named as a defendant. Thus the very joinder of a state entity with Individual Defendants as targets of the Complaint tends to reverse the simplistic presumption as announced in Kolar but withdrawn in later cases.

In sum, this Court will view the Complaint as targeting Individual Defendants in their individual (not their official) capacities. This opinion will analyze the remainder of the current Motion from that perspective.

That dispatches the position advanced in Motion Part E as well, for the Eleventh Amendment does not insulate individual

state actors against monetary damage claims under Section 1983. Simply put, although the Board enjoys Eleventh Amendment immunity, Individual Defendants do not.

That then of course shifts the inquiry to whether there is any legitimate basis for mulcting Individual Defendants for "past wages and benefits, pre-judgment interest, future wages and benefits, loss of earning capacity, damages to reputation and career, pain and suffering and loss of enjoyment of life" (Motion at 4). Bassett's counsel are expected to comment on that subject at the August 20 presentment date and, if need be, to file a written response thereafter.

As for Motion Part F, the unavailability of punitive damages under the Eleventh Amendment applies only as to the Board. If the requisite factual showing is made, however, Individual Defendants can be held for such damages in addition to compensatory damages. Indeed, <u>Hill</u>, 924 F.2d at 1374 teaches that the inclusion of a prayer for punitive damages itself signals the plaintiff's desire to advance an individual capacity suit.

Motion Part G, dealing with the asserted insufficiency of Bassett's due-process-based ground for recovery, will not be dealt with here. At the August 20 presentment date a timetable will be set for Bassett's response.

Next, Motion Part H correctly challenges Bassett's prayer

for an attorneys' fee award as to the state-law theories set out in Counts II, III and IV. Unless Bassett's counsel can come up with some state-law predicate for such an award, that portion of the prayer will be stricken from each of those counts.

Motion Parts I, J, K and L deal with Bassett's attempt to recover back pay. To the extent that recovery is sought against the Board, Motion Part I correctly invokes Eleventh Amendment immunity, while Motion Part J correctly asserts the exclusive jurisdiction of the Illinois Court of Claims in that respect. Motion Part L appears to be correct in contending that Individual Defendants' conduct was not implicated in the backpay decision.[3] What has been said to this point would seem to render Motion Part K moot, but Bassett's counsel will be expected to address that question in his further submissions.

As for Motion Part M, Count III (captioned "Malicious Prosecution") certainly reads as though the conduct on which it is grounded antedated the filing of the Complaint by more than two years. That being so, Count III would appear to be time-barred under 735 ILCS 5/13-202.

Finally, Motion Part N speaks to the contingency that this Court may reject Bassett's Section 1983 predicate for action.

---

[3] Unfortunately the Complaint's inconsistent and sloppy use of "defendant" in some instances and "defendants" in others has made the pleading unclear as to which type of recovery is sought to be obtained from the respective parties.

That possibility is of course prematurely asserted in the present proceedings.

In summary, what has been said here should provide grist for the mill of discussion at the August 20 presentment date. If and to the extent that either side takes issue with what has been set out in this opinion, that can of course be an added basis for discussion.

_____
                           Milton I. Shadur
                           Senior United States District Judge

Date:  August 15, 2008